IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEIMON CRAYTON,<br><br>　　　**Plaintiff,**<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC., BOB BLUM, NURSE ALLY, P. MYERS, HUNGATE, MAJOR MEZO, J. BATHON, A. DESAI, SGT. DILLINER, PETER MULHERN, CITY OF MT. VERNON, CITY OF PINCKNEYVILLE, SGT. SHIRTS,<br><br>　　　**Defendants.** | Case No. 24-cv-1077-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

　　Plaintiff Keimon Crayton, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Crayton's original Complaint alleged that the defendants were deliberately indifferent in delaying medical care of his injured shoulder in violation of the Eighth Amendment. But Crayton was denied leave to proceed *in forma pauperis* ("IFP") because he had three prior cases that were dismissed on the grounds that they were frivolous, and Crayton failed to allege that he was under imminent danger of serious physical injury (Doc. 10). He was directed to pay the full filing fee or file an amended pleading that demonstrated imminent danger.

1

Crayton subsequently filed his Amended Complaint and Motion for Leave to Proceed IFP (Docs. 11, 12). Crayton alleges that he faces imminent danger due to lacking access to proper pain medications.

This case is now before the Court for preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## *In Forma Pauperis* Motion

Section 1915(g) prohibits a prisoner from bringing a civil action or appealing a civil judgment IFP "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." *See* 28 U.S.C. § 1915(g). As the Court previously noted (Doc. 10, p. 2), Crayton has accumulated three "strikes" for purposes of Section 1915(g) and cannot proceed IFP unless he is under imminent danger of serious physical harm. *See* 28 U.S.C. § 1915(g). *See also Crayton v. DHS of Illinois*, Case No. 22-cv-4053-MMM (C.D. Ill. dismissed Apr. 14, 2022); *Crayton v. East Moline Police Dep't*, Case No. 22-cv-4067-CSB (C.D. Ill. dismissed June 21, 2022); *Crayton v. Rock Island County Courthouse*, Case No. 22-cv-4070-CSB (C.D. Ill. dismissed June 21, 2022).

"Imminent danger" within the meaning of Section 1915(g) requires a "real and proximate" threat of serious physical injury to a prisoner. *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003) (citing *Lewis v. Sullivan*, 279 F.3d 526, 529 (7th Cir. 2002)). Courts "deny leave to proceed [as a pauper] when a prisoner's claims of imminent danger are conclusory or ridiculous." *Id.* at 331 (citing *Heimermann v. Litscher*, 337 F.3d 781, 782 (7th Cir. 2003)). Additionally, "[a]llegations of past harm do not suffice" to show imminent danger; rather, "the harm must be imminent or occurring at the time the complaint is filed," and when prisoners "allege only a past injury that has not recurred, courts deny them leave to proceed [as a pauper]." *Id.* at 330 (citing *Abdul-Wadood v. Nathan*, 91 F.3d 1023 (7th Cir. 1996)).

Here, Crayton alleges that he is in significant pain stemming from a recent shoulder surgery. Although he received surgery for a condition with his shoulder, he still experiences dislocations in the shoulder on a daily basis. He is still in pain from the surgery, and Dr. Myers refuses to provide Crayton with his prescribed Tramadol. These allegations are sufficient to establish imminent danger at this time.[1] Thus, Crayton's renewed motion to proceed IFP (Doc. 12) is **GRANTED**, and he will be allowed to proceed with this case.

---

[1] This order authorizes Crayton to begin this litigation, but if a defendant challenges his allegations of imminent danger, and it turns out his allegations are untrue, he may be required to pay the full filing fee or face dismissal, and he may incur sanctions for filing a case that does not ultimately qualify for the imminent danger prong of § 1915(g). *See e.g., Jones v. Burle*, 2022 WL 4008712, at * 2 (7th Cir. 2022) (not published).

## The Amended Complaint

In the Amended Complaint, Crayton makes the following allegations: Crayton suffers from a torn labrum in his left shoulder (Doc. 11, p. 1). He alleges that he has been complaining about the injury since March 2023 (*Id.*). In April 2023, Dr. P. Myers ordered an x-ray of the shoulder. He then referred Crayton to Dr. Peter Mulhern, an orthopedic surgeon. Dr. Mulhern ordered an MRI scan of Crayton's left shoulder. On February 12, 2024, Crayton received an MRI, and he met with Dr. Mulhern to review the findings a week later. Dr. Mulhern determined Crayton suffered from a torn labrum (*Id.*).

Although Dr. Mulhern diagnosed Crayton with a torn labrum, Crayton alleges that Dr. P. Myers and A. Desai initially reported that they did not have the medical report from Dr. Mulhern and could not schedule any additional care. Crayton believes that their statements were lies because he had already spoken with Dr. Mulhern. Further, Crayton contends that the medical record from the specialist is always given to the officers who accompany an inmate on furlough to give to the prison medical team (*Id.* at p. 2). All Crayton was provided upon his return from the specialist was Naproxen for his pain (*Id.* at p. 2). Although he alleges that prison medical staff said they could not do anything further for him, Crayton acknowledges that he received surgery for his injury. In fact, on March 26, 2024, Dr. Mulhern performed surgery on Crayton's shoulder. But Crayton alleges that Dr. Mulhern did not perform a repair of the torn labrum. Instead, he merely cleaned out scar tissue (*Id.*). Crayton alleges that Dr. Mulhern's decision not to repair the tear left him with additional pain. He also suffers from daily shoulder dislocations (*Id.*). Crayton asked Dr. Mulhern to repair the tear, but Dr. Mulhern declined.

After the surgery, Crayton was transported back to Pinckneyville in a sling (*Id.*). Crayton was placed in the receiving wing of the prison for one day and then ordered back to his original cell in a general population housing unit (*Id.* at pp. 2-3). On March 27, 2024, Crayton spoke with Officer Hungate and Sergeant Dilliner about his shoulder pain (*Id.* at p. 3). He noted that he was in excruciating pain and that it was painful to walk up and down the stairs to his second-floor cell (*Id.*). Both officers indicated that they would speak with the healthcare unit about moving Crayton to a cell on the first floor (*Id.*). Although he waited all day for a response, he did not receive one. Later that day, Lieutenant J. Bathon saw Crayton in the dayroom and directed him to return to his cell. Crayton explained that he was waiting on a response to his request for a new cell, but Bathon stated he did not know anything about Crayton's condition or his request for a transfer to another cell (*Id.*). He instead told Crayton that he needed to return to his cell on the second floor (*Id.*).

Also on March 27, 2024, Crayton was prescribed the pain medication Tramadol by Blum (*Id.* at p. 3). Crayton informed both Blum and Dr. Myers that the medication did not completely eliminate his pain, but it did help to ease it (*Id.*). Blum prescribed Tramadol from March 26, 2024, through April 2, 2024 (*Id.*). On April 1, 2024, Nurse Ally denied Crayton his noon medication, informing Crayton that his prescription expired. On April 2, 2024, she again denied Crayton his morning and noon medications (*Id.*). Crayton believes that her statements were lies and that she delayed his access to pain medications (*Id.* at pp. 3-4).

On April 8, 2024, Crayton again met with Blum, who renewed his Tramadol prescription (*Id*. at p. 4). On April 10, 2024, Nurse Ally told Sergeant Shirts and Officer Hersley not to let Crayton out of his cell to obtain his morning pain medication (*Id*.). Nurse Ally lied, saying that the doctor forgot the pain medications. Crayton got in a confrontation with Nurse Ally, calling her a liar, and Sergeant Shirts intervened, telling Crayton to move away (*Id*.). He tried to explain his predicament to Major Mezo, but she told him to talk with Sergeant Shirts about his medical needs. Crayton also tried to complain to Lieutenant Bathon about Nurse Ally refusing to provide his pain medication, but Bathon ignored him. Sergeant Shirts later informed Bathon that Crayton tried to hide the medication in his sling. Bathon discussed the issue with Nurse Ally and then informed Crayton that he would not receive his medications that day (*Id*. at p. 5).

On April 12, 2024, Crayton had a follow-up with Dr. Mulhern (*Id*. at p. 5). Crayton asked for his torn labrum to be repaired, but Dr. Mulhern declined the request. He renewed Crayton's Tramadol prescription for one month—until his next follow-up appointment (*Id*.). Upon his return to Pinckneyville, Dr. Myers indicated that he did not receive the medical report and would not renew the prescription until he received Dr. Mulhern's report. Crayton alleges that Dr. Myers lied to him because Dr. Myers opened the envelope from Dr. Mulhern in front of Crayton (*Id*.). Dr. Myers claimed he did not receive a prescription from Dr. Mulhern. Crayton alleges that Blum approves Crayton's pain medication, but only for a week at a time, and sometimes delays the prescription for an entire week. Crayton alleges that he is in constant pain and the

Tramadol, when he receives it, only lowers the pain slightly (*Id.*). He also suffers from dislocations in his shoulder daily, causing him additional pain (*Id.*).

## **Preliminary Dismissals**

Simply put, Crayton fails to state a Fourteenth Amendment due process claim against any defendant. Crayton alleges that upon his return from surgery, he should have been housed in an ADA cell due to his surgery. He alleges that Dr. Myers, Major Mezo, Lieutenant Bathon, Hungate, and Dilliner failed to assign him to a cell or correct his cell assignment when he complained of pain and difficulties reaching his second-floor cell in general population (Doc. 11, p. 7). Although Crayton takes issue with his cell assignment after his return from surgery, an inmate does not have a due process interest in his cell assignment. *Owens v. Funk*, 760 F. App'x 439, 443 (7th Cir. 2019) (citing *DeTomaso v. McGinnis*, 970 F. 2d 211, 212 (7th Cir. 1992)). He also fails to allege that the officials acted with deliberate indifference in failing to assign him to an ADA cell.

Crayton also fails to state a common law fraud claim against Hungate, Dilliner, Nurse Ally, A. Desai, and Major Mezo. He alleges that these individuals lied to him about receiving medical records and/or reviewing instructions in his medical records. But Crayton merely states in conclusory fashion that their actions amounted to fraud. He fails to allege all of the requirements for a state law fraud claim. *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 905 (Ill. 1996) (quoting *Siegel v. Levy Organization Development Co.*, 607 N.E.2d 194 (Ill. 1992)) (elements of common law fraud include "(1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party

to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury."). Thus, any fraud claim is also **DISMISSED without prejudice**.

Crayton also lists Wexford Health Sources, Inc. as a defendant but fails to include any allegations against the company. He simply states that Wexford violated his due process rights and committed fraud. But Wexford can only be liable if it had a policy or practice that caused the constitutional deprivation alleged in the pleading. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653-4 (7th Cir. 2021); *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference if it had a policy or practice that caused the violation). Crayton fails to point to any such policy or practice. Thus, any claim against Wexford is also **DISMISSED without prejudice**.

Crayton also fails to state a claim against Nurse Ally, Sergeant Shirts, Officer Hersley, Bathon, and Major Mezo for his lack of access to medication in April 2024. Although he alleges that there was a dispute as to whether Crayton was trying to hide the medications or whether Nurse Ally simply denied him access to the medication, the denial of medications on two occasions does not amount to deliberate indifference.[2]

---

[2] Crayton's claims regarding his access to medications on a few isolated dates also does not meet the imminent danger standard. It is a past harm that does not appear to have reoccurred. The only claim that appears to be ongoing is the complete denial of Crayton's access to Tramadol due to the failure to renew the prescription.

Crayton also lists the City of Mt. Vernon and City of Pinckneyville, Illinois, as defendants in his case caption. But he fails to include any allegations against them in the statement of his claim and thus any such claims against the cities are **DISMISSED without prejudice**.

Finally, Crayton fails to state a claim against Dr. Mulhern, the physician who performed the shoulder surgery. A private medical provider may be liable for constitutional deprivations under Section 1983 in certain situations. *See West v. Atkins*, 487 U.S. 42 (1988) (holding that a physician who is under contract with the State to provide medical services to inmates acts "under color of state law" within the meaning of Section 1983). But even assuming Dr. Mulhern acted under the color of state law, the allegations do not suggest deliberate indifference on Dr. Mulhern's part. Dr. Mulhern ordered an MRI of Crayton's shoulder, conducted surgery on his shoulder, prescribed Crayton with medication, and continues to follow-up with Crayton on his condition. Although Crayton argues that he did not receive the surgery that he wanted or thought would be most effective, his mere disagreement with the surgeon does not amount to deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir.1996). Thus, any potential claim against Dr. Mulhern is also **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Amended Complaint, the Court finds it convenient to designate the following count:

9

>**Count 1:** Eighth Amendment claim for deliberate indifference to a serious medical need against Bob Blum, Dr. P. Myers, and A. Desai for denying and/or delaying Crayton's access to pain medications.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[3]

At this stage, Crayton states a viable claim against Dr. P. Myers for denying Crayton access to pain medications. Crayton adequately alleges that Dr. Myers is currently denying him access to adequate pain medications, including his access to Tramadol. Although Crayton also refers to previous conduct of Dr. Myers, including his delay in providing him with care, the allegations show that Dr. Myers referred Crayton for a professional second opinion and adopted the recommendations of Dr. Mulhern (Doc. 11, pp. 1-2). Nothing in the Amended Complaint suggests that Dr. Myers acted with deliberate indifference in treating Crayton's injury, other than possibly with his current actions in denying Crayton access to prescription pain medications. Further, to the extent Crayton takes issue with Dr. Myers's initial diagnosis and adoption of Dr. Mulhern's report and diagnosis, these are all past harms that do not meet the imminent danger

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

exception. Crayton also alleges that B. Blum prescribed him Tramadol but only periodically, one week on and one week off. Crayton alleges that Blum's failure to provide him with a continuous prescription leaves him in continued pain (*Id*. at p. 5). Thus, Crayton also states a claim against Blum for deliberate indifference.

As to A. Desai, however, Crayton fails to state a claim. Crayton alleges that he has informed Desai that Tylenol, Motrin, and Naproxen do not help his shoulder pain. He does not indicate when he last spoke to A. Desi or whether he has any current interaction with her. He only alleges that he spoke to A. Desai one week after his initial appointment with Dr. Mulhern, prior to his surgery, and A. Desai informed him that she did not have Dr. Mulhern's report (Doc. 11, p. 2). Although he believes she lied, nothing in the pleading demonstrates that she acted with deliberate indifference. Crayton received his Tramadol prescription and his surgery. Thus, any claim against A. Desai is **DISMISSED without prejudice**.

## Injunctive Relief

Crayton's request for relief requests a preliminary and permanent injunction for access to his prescribed pain medication and assignment to an ADA cell. Although Crayton seeks a preliminary injunction, he has not filed a separate motion for injunctive relief or demonstrated in his pleading that he is entitled to such relief. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012) (A plaintiff has the burden of demonstrating (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction.). Thus, his request for a preliminary injunction is **DENIED**. To the extent Crayton seeks a

preliminary injunction, he would need to file a separate motion demonstrating his entitlement to such relief.

## Disposition

For the reasons stated above, Count 1 shall proceed against Bob Blum and Dr. P. Myers. All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendants Bob Blum and Dr. P. Myers: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 11), and this Memorandum and Order to each defendant's place of employment as identified by Crayton. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Crayton, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section

1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.**

If judgment is rendered against Crayton, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Crayton is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED:  May 16, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Amended Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**