## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

KEIMON CRAYTON,

      Plaintiff,

v.

                         Case No. 24-cv-1077-NJR

BOBBY BLUM and PERCY MYERS,

      Defendants.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Keimon Crayton, an inmate of the Illinois Department of Corrections ("IDOC"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This matter is currently before the Court on a motion for summary judgment filed by Defendants Dr. Bobby Blum and Dr. Percy Myers (Docs. 30, 31). With their motion, Defendants filed a notice to Crayton notifying him of their motion and advising him that a failure to respond could result in the dismissal of his claims (Doc. 32). On December 2, 2024, Defendants certified that they mailed a copy of the notice to Crayton at Pinckneyville Correctional Center (*Id.* at p. 4).

A review of the IDOC inmate search website reveals, however, that Crayton was paroled from IDOC custody on October 18, 2024. *See* IDOC Individual in Custody Search, https://idoc.illinois.gov/offender/inmatesearch.html (last visited April 17, 2025). Crayton failed to inform the Court of his release, nor did he provide the Court with his current address. The Court previously warned Crayton that he was under a continuing obligation to keep the Court, and all parties, informed of any change in his address and that failure to

1

comply with the Order could result in the dismissal of his claims (Doc. 13, p. 13). There is no forwarding address for Crayton, and the IDOC website indicates that he absconded from parole. His current whereabouts are unknown.

### BACKGROUND

On April 11, 2024, Crayton filed his Complaint alleging deliberate indifference in delaying medical care for his injured shoulder in violation of the Eighth Amendment (Doc. 1). Because Crayton had three prior cases that were dismissed on grounds that they were frivolous, and he failed to allege in his Complaint that he was under imminent danger of serious physical injury, his request for leave to proceed *in formal pauperis* ("IFP") was denied (Doc. 10). He was directed to pay the full filing fee or file an amended pleading that demonstrated imminent danger (*Id.*). On May 8, 2024, Crayton filed an Amended Complaint and another motion for leave to proceed *in forma pauperis*, arguing that he faced imminent danger due to his lack of access to proper pain medications (Docs. 11, 12). On May 16, 2024, the Court granted Crayton's motion for leave to proceed IFP, finding that he had established imminent danger at the time because he alleged that Defendants were denying him access to pain medication (*Id.* at p. 3).

Specifically, Crayton's Amended Complaint alleged that on March 26, 2024, he had surgery for a torn labrum in his shoulder. After he returned to Pinckneyville, Dr. Bobby Blum prescribed Crayton Tramadol for his pain (Doc. 13, pp. 4-5). He received Tramadol from March 26, 2024, until April 2, 2024 (*Id.* at p. 5). On April 8, 2024, Blum renewed his Tramadol prescription (*Id.* at p. 6). On April 12, 2024, he had a follow-up appointment with the surgeon who renewed his prescription for one month (*Id.*). But upon returning to Pinckneyville, Dr. Percy Myers contended that he did not have the medical report from the surgeon and would

not renew the prescription until he read the report (*Id.*). Crayton alleged Dr. Myers lied

because he saw Dr. Myers with the envelope containing the report (*Id.*). Dr. Blum later

approved the prescription, but Crayton alleged that Dr. Blum only prescribed the

prescription a week at a time and sometimes delayed the prescription for an entire week (*Id.*).

As a result, Crayton was in constant pain (*Id.*).

After a review of Crayton's claims pursuant to 28 U.S.C. § 1915A, he was allowed to

proceed on a single count against both Dr. Blum and Dr. Myers.

> Count 1:    Eighth Amendment claim for deliberate indifference to a serious
> medical need against Dr. Blum and Dr. Myers for denying
> and/or delaying Crayton's access to pain medications.

(Doc. 13, p. 10).

Crayton filed three grievances regarding his access to Tramadol after his shoulder

surgery.

> **April 15, 2024 Grievance (Grievance # K59-0424-1355):** On April 15, 2024,
> Crayton submitted an emergency grievance complaining that he received
> surgery on his scar tissue when he was supposed to receive a shoulder repair
> of his torn labrum (Doc. 31-3, pp. 6-7). He further complained that he was still
> in pain after the surgery. Although he acknowledged being prescribed
> Tramadol, he was taken off of the medication one week after his surgery and,
> at the time, was only receiving Ibuprofen and Tylenol (*Id.* at p. 7). He argued
> that a nurse was lying to him about his ability to receive Tramadol (*Id.*). He
> later acknowledged that he was given another prescription for Tramadol on
> April 9, 2024, but was worried that after one week the prescription would be
> discontinued (*Id.*).
>     On April 18, 2024, the grievance office received the grievance (Doc. 31-
> 4, p. 3). The Chief Administrative Officer ("CAO") reviewed the grievance and
> denied the request to treat the grievance as an emergency (Doc. 31-3, p. 6). The
> grievance was returned to Crayton to proceed through the normal grievance
> process (Doc. 31-4, p. 3). On May 2, 2024, the counselor received Crayton's
> grievance (Doc. 31-3, p. 6). On May 15, 2024, she returned the grievance noting
> that per the healthcare unit administrator, Tramadol is a controlled medication
> and not meant for chronic pain (*Id.*). The standard for issuing Tramadol is to
> prescribe the medication one week at a time (*Id.*). The administrator noted that
> on April 12, 2024, the orthopedic specialist met with Crayton to remove his

3

sutures and noted that Crayton complained of pain that was 9 out of 10, which the specialist noted was unusual given the recovery time from the surgery (*Id.*).

On July 24, 2024, the grievance officer received Crayton's grievance (*Id.* at p. 5). The grievance officer noted that the grievance was received over the 60-day time frame for submitting a grievance for review (*Id.*). The grievance officer recommended that the grievance be rejected as untimely (*Id.*). On July 26, 2024, the CAO concurred with the grievance officer's findings (*Id.*). There is no indication that Crayton appealed the grievance to the Administrative Review Board ("ARB") (Doc. 31-2).

**March 29, 2024 Grievance (Grievance # K59-0424-1356)**: On March 29, 2024, Crayton submitted a grievance about his shoulder pain and the medication he received for the pain after his procedure (Doc. 31-3, pp. 8-9). He noted that the pain medication was too weak for his pain. He also complained that he was housed in general population instead of the medical unit (*Id.*).

Crayton again checked that the grievance was an emergency (*Id.*). On April 17, 2024, the grievance was received by the grievance office and forwarded to the CAO (Doc. 31-4, p. 3). On April 18, 2024, the CAO reviewed the grievance and deemed it not an emergency (Doc. 31-3, p. 8). On May 15, 2024, the counselor noted that the grievance appeared to be a duplicate of Grievance #1355 and noted that placement was an administrative decision (*Id.*). The grievance officer also treated the grievance as a duplicate and combined the grievance with the response to Grievance #1355 (*Id.* at p. 5). The grievance was similarly rejected as untimely (*Id.*).

**April 20, 2024 Grievance (Grievance #K59-0424-1421)**: Crayton submitted a second grievance in April regarding his pain after his shoulder procedure. Crayton complained that he was in pain every day from a torn labrum that the surgeon refused to repair (Doc. 31-3, p. 15). Although the surgeon prescribed Tramadol for his pain, Crayton argued that Dr. Myers looked at the surgeon's orders but said he refused to provide the medication prescribed by the surgeon (*Id.*). Crayton noted that the surgeon prescribed Tramadol on April 12, 2024, but as of the date of his grievance he had yet to receive the medication (*Id.* at p. 16).

Crayton marked his grievance as an emergency. On April 23, 2024, the grievance office received the grievance and forwarded the grievance to the CAO (Doc. 31-4, p. 3). The CAO denied that the grievance was an emergency (Doc. 31-3 at p. 15). On May 2, 2024, the counselor noted that the grievance failed to cite the dates when the events described occurred (*Id.*). On May 14, 2024, the grievance officer received Crayton's grievance (*Id.* at p. 14). On May 20, 2024, the grievance officer recommended that the grievance be denied (*Id.*). The grievance officer noted that per the healthcare unit administrator, who had previously addressed other grievances regarding Crayton's pain medications, Tramadol was a controlled medication and not intended for chronic pain (*Id.*). As such, Crayton only received a seven-day prescription consistent with

medical standards (*Id.*). The orthopedic specialist also found Crayton's complained of pain unusual given the recovery time after his procedure and he found no instability in his shoulder (*Id.*). The surgeon suggested physical therapy. On May 21, 2024, the CAO concurred with the grievance officer's findings and the grievance was returned to Crayton (*Id.*).

## LEGAL STANDARDS

"Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the defendant] is entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id*. Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008), the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative

remedies" are not required to be decided by a jury but are to be determined by the judge. Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, Crayton was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claim. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the ["CAO"] within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The [CAO] shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO

who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## DISCUSSION

Because Crayton failed to respond to Defendants' statement of facts, the Court accepts the statement of facts as true. *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010) (citing *Cracco v. Vitran Exp. Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)). *See also* SDIL Local Rule 56.1(g) ("All material facts…shall be deemed admitted for purposes of summary judgment unless specifically disputed."). The admission of the material facts, however, does not automatically grant Defendants' motion for summary judgment; they must still demonstrate that they are entitled to judgment as a matter of law. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012).

Simply put, Crayton failed to exhaust his administrative remedies *before* filing his lawsuit. Crayton filed his original Complaint in this case on April 11, 2024 (Doc. 1). But he submitted all of his grievances after filing his Complaint. Although Crayton's Grievance

# 1356 indicates that he drafted the grievance on March 29, 2024, it was not logged in his cumulative counseling summary as received until April 17, 2024 (Doc. 31-4, p. 3). The grievance office received both Grievance #'s 1355 and 1356 on the same date (*Id.*). Crayton drafted Grievance # 1421 on April 20, 2024, and it was received on April 23, 2024 (Doc. 31-3, p. 15; Doc. 31-4, p. 3). None of the grievances appear to be fully exhausted, but Crayton did not even begin the grievance process until after he filed his lawsuit.

Exhaustion is a precondition to filing suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004); *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 534-35 (7th Cir. 1999). A plaintiff cannot file his lawsuit first and then seek to exhaust his administrative remedies. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) ("a 'sue first, exhaust later' approach is not acceptable") (citing *Ford v. Johnson*, 362 F.3d 395, 398-400 (7th Cir. 2004)). Here, Crayton filed his Complaint before he fully exhausted his administrative remedies.

Crayton did file his Complaint under Section 1915(g)'s imminent danger exception. The provision bars an inmate, who on three or more previous occasions brought an action that was dismissed on the grounds that it was frivolous, malicious, or failed to state a claim, from bringing a civil action *in forma pauperis* "unless the prisoner is under imminent danger of serious physical injury." *See* 28 U.S.C. § 1915(g). Although the Court found that Crayton established imminent danger to proceed *in forma pauperis*, there is no imminent danger exception to the exhaustion requirement. *See Fletcher v. Menard Correctional Center*, 623 F.3d 1171, 1173 (7th Cir. 2010). Nor has Crayton established that the grievance process was unavailable to him. He clearly had access to the grievance process as he filed numerous grievances regarding his access to pain medications. He simply failed to wait for those

grievances to be fully exhausted before filing his Complaint. Thus, Crayton failed to exhaust his administrative remedies prior to filing suit and his claims must be dismissed.

CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (Docs. 30, 31) is **GRANTED**. Crayton's Amended Complaint is **DISMISSED without prejudice** for his failure to exhaust his administrative remedies prior to filing his claims. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close the case.

**IT IS SO ORDERED.**

**DATED:  April 21, 2025**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**